**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kerri Lee, | No. CV-17-03868-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Keri Lee seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  Background.**

On September 10, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning September 10, 2013. On June 10, 2015, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On September 3, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's

1 decision the Commissioner's final decision.

**II. Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III. The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the

Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 10, 2013, and that she has not engaged in substantial gainful activity since that date. (AR 18.) At step two, the ALJ found that Plaintiff has the following severe impairments: "asthma, chronic obstructive pulmonary disease ("COPD"), Raynaud's syndrome, Ehlers-Danlos Syndrome, lumbar and cervical degenerative disc disease, rochaneric bursitis, obesity, social phobia, posttraumatic stress disorder ("PTDS"), and major depressive disorder ("MDD")." (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found the following capabilities with respect to Plaintiff's residual functional capacity:

> Lift and/or carry up to 20 pounds occasionally and 10 pounds frequently . . . standing and/or walking for four hours, and sitting for six

> hours, in an eight hour workday, with normal breaks . . . occasionally perform balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, with no climbing of ladders, ropes, or scaffolds . . . occasional exposure to non-weather related extreme cold and heat, humidity, poorly ventilated areas, and hazards such as unprotected heights that are high or exposed, moving mechanical parts, and dangerous machinery . . . occasional exposure to pulmonary irritants such as fumes, odors, dusts, and gases . . . tasks that can be learned by demonstration within 30 days, and minimal interaction with co-workers and supervisors . . . work in the vicinity of others but not in tandem with others . . . minimal in person interaction with the public.

(AR at 22.) The ALJ further found that Plaintiff has no past relevant work. (*Id.*) At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*)

**IV. Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ committed materially harmful error by rejecting the assessments from Plaintiff's treating primary care physician and physician assistant, Dr. Cunningham and PAC Sessler, and from Plaintiff's treating pulmonary nurse practitioner, Judith Newell, N.P., and (2) the ALJ committed materially harmful error by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in this record as a whole. The Court will address each argument.

**A. Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of treating physician Dr. Cunningham, physician's assistant Sheri Sessler, and nurse practitioner Judith Newell. The Court will address the ALJ's treatment of each opinion below.

**1. Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see*

*also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Cunningham, M.D. and Judy Newell, N.P.

The opinions of Cunningham, Sessler, and Newell are contradicted by the opinions of state agency physicians Dr. James Wellons, Dr. Donald Robins, Dr. Winston Brown, and Dr. Jonathan Zeuss, each of whom opined that Plaintiff had greater abilities than those identified by Cunningham, Sessler, and Newell. The ALJ could therefore discount the treating physicians' opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

#### a. Dr. Cunningham

Dr. Cunningham was Plaintiff's primary care physician from February, 2011 through 2015. (AR 93, 429-97, 503-39, 558-597, 771-84, 1250-67, 1406-07.) Sherri

Sessler, Cunningham's assistant, treated Plaintiff for multiple conditions with various medications and referrals to specialists. (*Id.*) In September 2012, Sessler saw Petitioner for a routine health maintenance check-up and flu shot, wherein Sessler observed normal findings other than some asthma and arthritis. (AR 432.) In November 2012, Petitioner saw Sessler regarding a sinus infection, and Sessler observed normal objective findings other than mild congestion. (AR 422.) Later that month, Petitioner saw Sessler seeking a letter to receive government access benefits. (AR 421.) Sessler similarly observed normal objective findings but diagnosed Petitioner with migraines and fibromyalgia. (*Id.*) In January 2014, Sessler again observed largely normal findings apart from some wheezing. (AR 778.) In February 2014, Plaintiff was seen regarding her pneumonia, but again her objective findings were all within normal limits. (AR 776.) Later that month, Plaintiff saw Sessler complaining of oral thrush, but Sessler determined again that he was within normal limits on all counts, and advised Plaintiff to rinse her mouth after using her inhaler. (AR 774.) A health maintenance check conducted by Sessler in March 2014 returned normal findings. (AR 773.) In April 2014, Plaintiff complained of knee pain once a week, but Sessler again observed normal findings. (AR 772.) In May 2014, in response to Petitioner's complaints of a sinus infection, the ALJ Plaintiff's respiratory function was within normal limits with some wheezing. (AR 771.)

Dr. Cunningham and his assistant, Sheri Sessler, completed a "Medical Assessment of Ability to do Work-Related Physical Activities" for Plaintiff, wherein they limited Plaintiff to sitting, walking, and/or standing for less than two hours in an eight-hour workday, with normal breaks, and lifting and/or carrying less than 10 pounds. (AR 792.) Sessler and Cunningham further opined that Plaintiff requires alternation between sitting, walking, and standing every 1-20 minutes and rest every 5-8 minutes. (*Id.*) Finally, Sessler and Cunningham limited Plaintiff to occasional use with her hands and feet, and occasional bending, reaching, and stooping. (*Id.*) Sessler and Cunningham therefore concluded that Plaintiff could not perform even sedentary work and would be expected to miss six or more days of work per month due to her impairments. (*Id.*)

The ALJ determined that Cunningham and Sessler's co-authored opinion was entitled to little weight because (1) Cunningham appears to be a general practitioner, rather than a specialist, entitling his opinion to less weight, and (2) the conclusions were "vague and not supported by the clinical findings" of Sheri Sessler. (AR 28.)[1]

### i. General practitioner, rather than a specialist.

The ALJ's first reason for assigning Cunningham's opinion little weight is that he "appears to be a general practitioner as opposed to a specialist, which further entitles his conclusions to minimal weight." (AR 28.) This Court has found that this is "not a specific and legitimate reason to reject the opinion of Plaintiff's treating physician." *Silva v. Comm'r of Soc. Sec.*, 2018 WL 3342898, at *12 (D. Ariz. 2018). The ALJ was not entitled to reject the opinion of Plaintiff's treating physician simply because he is a general practitioner. *See Ross v. Berryhill*, 2017 WL 1273766, at *6 (E.D. Cal. Mar. 17, 2017) ("[T]he fact that Plaintiff's treating physician was not a specialist is not a specific and legitimate reason for discounting that opinion."). This is therefore an insufficient reason for rejecting Cunningham and Sessler's co-authored opinion.

### ii. Vague and not supported by clinical findings.

The ALJ's next reason for giving Cunningham and Sessler's opinion little weight is that it is "vague and not supported by the clinical findings of . . . Sessler." (AR 28.) When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). A discrepancy in a doctor's recorded observations and final assessment in ability to stand or walk "is a clear and convincing reason for not relying on the doctor's opinion regarding [the plaintiff's] limited ability to stand and walk." *Id.*

---

[1] The ALJ also notes that Sessler treated Plaintiff almost exclusively, rather than Cunningham. (AR 28.) SSR 06-03p does give less weight to the opinions of non-acceptable medical sources when establishing the *existence* of an impairment. SSR 06-03p. But the ALJ discredits Sessler's opinion in her analysis of the *severity* of Plaintiff's impairments, not the existence of them. (AR 28.) The ALJ's comment that Sessler primarily treated Plaintiff, rather than Cunningham himself, is therefore inapposite.

Here, while Plaintiff did exhibit symptoms throughout her treatment, many of Sessler's records note normal physical examinations with only mild to moderate symptoms in one or two categories as identified above. (See AR 421, 771-73, 776, 778.) Normal findings throughout Plaintiff's treatment record could lead to a reasonable conclusion that the limitations identified by Dr. Cunningham and Sheri Sessler were not supported by Sessler's objective findings. The ALJ's second reason for rejecting Cunningham and Sessler's co-authored opinion is therefore sufficiently specific and legitimate. *See Bayliss*, 427 at 1216.

### b. Newell, N.P.

The ALJ also determined that Judith Newell's opinion was entitled to little weight. (AR 28.) Judith Newell is a pulmonology nurse practitioner who has treated Plaintiff for COPD, shortness of breath, asthma, and chronic coughing since 2011. (AR 342-410, 737-40, 742-43, 747-55, 1391-94, 1383-86, 1375-82.)

In November 2012, Newell noted that Plaintiff had been recently treated for sinusitis "with complete resolution," and that Plaintiff was doing well. (AR 1396.) Newell noted that Plaintiff "always has a little cough," but testing revealed no acute infiltrates/masses/cardiomegaly. (AR 1398.) In July 2014, Plaintiff was "doing ok with no new complaints," and Newell found only mild obstructive pulmonary disease, suggesting that Plaintiff continue medication as normal. (AT 1393-94.) In September 2014, Newell found that Plaintiff's chest was clear throughout, and that her respirations were full and symmetrical. (AR at 1389.) In October 2014, Newell concluded that Plaintiff was "feeling better" and that, while she was coughing up some phlegm, she had no new complaints and otherwise unremarkable findings. (AR 1379-80.) In November 2014, Newell noted that, while her breathing is "never very good," Plaintiff often forgets to take her medication. (AR 1375.) In January 2015, Newell saw Plaintiff for a follow-up after her bout with pneumonia, but noted that Plaintiff "has done well since" and "seems to be coping pretty well." (AR 1371.) Again, Newell noted that her findings were otherwise unremarkable. (*Id.*) During her April 2015 visit, Newell noted that Plaintiff "has been doing fairly well–

using Allegra which seems to help." (AR 1368.) Newell recommended that she continue to use her inhalers as prescribed and continue using oxygen with sleep as needed. (AR 1370.)

Based on her findings, Newell concluded that Plaintiff cannot sustain full-time work on a regular and consistent basis, and limited her to sitting 4-6 hours and standing and/or walking for less than two hours in an eight-hour work day. (AR 1410.) Newell further limited Plaintiff to lifting and/or carrying less than 10 pounds, and found that Plaintiff would miss two to three days of work a month due to her impairments. (AR 1410-11.)

The ALJ gives Newell's opinion little weight, finding that (1) her statement about Plaintiff requiring regular office visits was vague and did not address specific work-related abilities, (2) she is not an acceptable medical source, entitling her opinion to less deference than those of acceptable medical sources, (3) she "provided no explanation and merely checked boxes on a form," and (4) her conclusions are inconsistent with her own findings. (AR 28.)

### i. Vague and did not address specific work-related abilities.

The ALJ first discredits Newell's opinion by arguing that her conclusions are "vague and do not address specific work-related abilities." (AR 28.) The ALJ seems to be referring specifically to Newell's statement indicating that Plaintiff's impairments require regular office visits and prescription medication. (AR 28) (citing 38F/1.) But in the following paragraph of her opinion, the ALJ discusses Newell's specific findings as to Plaintiff's specific work-related abilities outlined above. (See AR 28) (noting that Newell "limited claimant to Plaintiff 4-6 hours and standing and/or walking for less than two hours in an eight-hour work day" and that she "limited the claimant to lifting and/or carrying less than 10 pounds"). The ALJ is cherry-picking from Newell's opinion, concluding that it is vague and unspecific, while ignoring the provided evidence supporting her conclusion. *See Lannon v. Comm'r of Soc. Sec.*, 234 F. Supp. 3d 951, 960 (D. Ariz. 2017) (holding that ALJs "must review the whole record; they cannot cherry-pick evidence to support their findings") (citing *Hoholan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001)). While Newell's

statement that Plaintiff required regular medical visits may have failed to identify specific work-related impairments, Newell's opinion as a whole did not suffer from such insufficiencies. The Court finds the ALJ's first reason is not a specific and legitimate reason for discrediting Newell's opinion in its entirety.

### ii. Not an acceptable medical source.

The ALJ's second reason for discrediting Newell's opinion is that nurse practitioners' opinions are entitled to less weight. (AR 28.)[2] SSR 06-03p identifies nurse practitioners and physician's assistants as medical sources who are not acceptable medical sources. SSR 06-03p "Other Sources." But SSR 06-03p states that these opinions "cannot establish the existence of a medically determinable impairment," but may provide insight as to "the severity of those impairment(s) and how it affects the individual's ability to function." *Id.* SSR 06-03p also states that "[t]he weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including the source's qualifications, the issue(s) that the opinion is about, and many other factors." *See* SSR 06-03p "Policy Interpretation." In fact, it may be appropriate to give the opinion of a medical source who is not an "acceptable medical source" *greater* weight than that of an acceptable medical source "if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.*

The ALJ's conclusion that Newell's opinion is entitled to less weight simply because she is not an acceptable medical source is unpersuasive. True, under SSR 06-03p, Newell does not qualify as an acceptable medical source. But the ALJ does not discredit Newell's opinion as it relates to the *existence* of Plaintiff's medically determinable impairments; the ALJ already concluded that many of Plaintiff's pulmonary impairments

---

[2] The Court acknowledges that SSR 06-03p was rescinded in March of 2017, but because Plaintiff's claim was filed before that date, the amendment does not apply. *See Bridges v. Commissioner of Social Security Administration*, 2018 WL 4284846 n.1 (Ariz. 2018) ("The Social Security Regulations have recently been amended . . . Because Plaintiff filed her claim before this date, the amendment does not apply.").

are legitimate. (AR 18.) Rather, the ALJ discredits Newell's opinion when evaluating the *severity* and limiting effects of Plaintiff's impairments. (AR 18.) Newell's extensive treatment of Plaintiff over a period of time, combined with her specialized knowledge, entitles her opinion to significant weight when considering the severity of Plaintiff's pulmonary impairments. The ALJ's second reason for discrediting Newell's opinion is therefore insufficient.

### iii. Conclusion inconsistent with own findings.

The ALJ's third reason for giving little weight to Newell's opinion is that it is inconsistent with her own medical findings. (AR 28.) An ALJ may discount testimony from "other sources" if the ALJ "'gives reasons germane to each witness for doing so.'" *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001)). An ALJ provides sufficiently germane reasons by finding that an opinion is conclusory and conflicts with the source's own assessments which reveal only intermittent symptoms. *See Molina*, 674 at 1111.

Here, the ALJ concluded that Newell's opinion was conclusory and inconsistent with her findings. (AR 28.) The ALJ noted that Plaintiff does have a history of asthma but has consistently reported improvement in symptoms, pointing to normal examinations during her treatment with Newell. (AR 23.) The ALJ acknowledged Plaintiff's February 2014 hospitalization for pneumonia and COPD diagnosis, but noted that her condition stabilized with treatment. (AR at 24.) In July 2014, Newell noted that Plaintiff's chest was clear throughout, even with forced exhalation. (AR 1393.) In January 2015, after a bout of pneumonia that was resolved with medication, Newell noted that Plaintiff had done well and had no fatigue or malaise. (AR 1371-72.) In April 2015, again a review of Plaintiff's systems was mostly unremarkable, and Newell instructed Plaintiff to continue the current plan of care. (AR 1370.) These largely normal findings and noted intermittent symptoms could lead to the reasonable conclusion that Newell's ultimate limitations are inconsistent with her own findings. The ALJ's third reason for discrediting Newell's opinion is therefore sufficient.

####        iv.    Check-off boxes.

The ALJ's fourth and final reason for discrediting Newell's opinion is that it "provided no explanation and merely checked boxes on a form." (AR 28.) An ALJ had errs by discounting a physician's opinions presented in a checked-box form when the physician's opinions "were entirely consistent with the hundreds of pages of treatment notes." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). However, an ALJ may reject an opinion in checked-box form if the limitations identified therein "fail to provide an explanation or clinical evidence supporting [the] conclusions." *Fleming v. Astrue*, 303 Fed. App'x. 546, 549 (9th Cir. 2008) (citing *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)).

Here, Newell's opinion was completed after she had reviewed Plaintiff's records, performed multiple tests and examinations, and authored a narrative describing her findings regarding her opinion of Plaintiff's medical limitations. (AR 802-10.) However, as discussed above, the ALJ reasonably concluded that Newell's extensive treatment records are inconsistent with her ultimate findings. The fact that Newell's ultimate conclusion merely checked boxes on a form, without providing further explanation, further supports the ALJ's decision to discredit Newell's limitations. The ALJ's fourth and final reason for discounting Newell's opinion is therefore sufficient.

### 4.    Crediting Non-Examining Physician.

Plaintiff argues that the ALJ committed legal error by according the opinions of the state agency physicians significant weight because they were non-examining physicians. Specifically, Plaintiff argues that the ALJ failed to adequately discount Cunningham and Newell's opinions because she "did not identify any exhibits, provide the names of the state agency doctors, or identify any particular opinion upon which the ALJ relied." (Doc. 20 at 16). But the ALJ is not required to identify each state agency physician's opinion by name when discrediting the conflicting opinions of the treating physicians; rather, the ALJ must identify specific and legitimate reasons for doing so, based on objective evidence in the medical record. *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-

examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). As outlined above, the ALJ provided specific and legitimate reasons, drawn from the medical record, to justify the ALJ's decision to credit the opinions of the non-examining state agency physicians over the opinions of Plaintiff's treating physicians. The Court concludes that the ALJ's decision to credit the opinions of the state agency physicians was not legal error.

### B. The ALJ Did Not Err in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 30 F.3d 1273, 1284 (9th Cir. 1996); *see Orn v. Astrue*, 495 F.3d 625, 637–39 (9th Cir. 2007).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

At the hearing, Plaintiff testified that she has "pain with taking breaths," (AR 48.),

1 and back pain "in all different joints." (AR 54.) Plaintiff further explained that when her back pain was severe, between March 2013 and February 2014, Plaintiff was "laying in bed constantly." (AR 57.) When asked how long she can stand before she has to sit down, Plaintiff testified that some days she has to use the electric wheelchair when she goes to the grocery store. (AR 54.) Plaintiff further testified that the heaviest thing she could lift was a gallon of milk. (AR 56.) Finally, Plaintiff testified that she can only sit for about an hour before having to change positions. (AR 58.) The ALJ found Plaintiff's alleged degree of pain testimony not fully credible based on (1) Plaintiff's conservative treatment, (2) the effectiveness of Plaintiff's medication, and (3) Plaintiff's work history, and (4) Plaintiff's objective medical findings. (AR 27.)

### 1. Conservative treatment.

The ALJ's first reason for finding Plaintiff not fully credible is that she received only conservative treatment. (AR 28.) An ALJ may discredit a Plaintiff's subjective pain testimony if the record reflects that the Plaintiff responds favorably to minimal, conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 135, 1040 (9th Cir. 2008) (finding plaintiff not credible because he responded favorably to "the use of anti-inflammatory medication, transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ concludes that Plaintiff's treatment was "conservative and routine" by noting that the record indicates no surgery for Plaintiff's musculoskeletal impairments and no prescription for an ambulatory device. (AR 27.) However, "no medical opinion in this record characterizes the treatment of Plaintiff's [impairments] as 'conservative,' nor does substantial evidence support that conclusion." *Schultz v. Covin*, 32 F. Supp. 3d 1047 ((N.D. Cal. 2014). To be sure, Plaintiff testified that between March 2013 and February 2014 she "was taking a lot of Advil and stuff or anti-inflammatory type stuff that [she] could get over-the-counter." (AR 57.) However, Plaintiff testified that "it wasn't working." (*Id.*) In reality, the record indicates Plaintiff's treating physicians prescribed multiple medications, including Abilify, Cogentin, Fioricet, Hydroxyzine, Lexapro, Meloxicam, Neurontin, Norco, Toradol, Trazodone, and Urlam. (Doc. 20-1.) The ALJ fails to explain

how the use of powerful pain medication constitutes routine or conservative treatment. Further, Plaintiff had multiple rounds of steroid injections (AR 349-90, 444-88, 491-92, 808-51) and denervation/ablation procedures (AR 858-65) to relieve her back, knee, and hip pain. The 9th Circuit has rejected arguments that "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *Garrison*, 759 F.3d at 101 n.20. The ALJ also failed to explain how a more aggressive course of treatment, such as surgery or hospitalization, would have been proper treatment for Plaintiff, or how a finding of such treatment would be necessary to find the severity of symptoms reported by Plaintiff. The ALJ's first reason for discrediting Plaintiff's testimony is therefore insufficient.

### 2. Effectiveness of medication and non-compliance.

The ALJ's second reason for finding Plaintiff not fully credible was the effectiveness of her medication and her failure to take it consistently. (AR 27.) Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Further, failure to follow a prescribed course of treatment may cast doubt on the sincerity of a plaintiff's pain testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 680 (9th Cir. 2017). An ALJ cannot cast doubt on a plaintiff's subjective testimony based on one instance of noncompliance without "evaluat[ing] that claim or find[ing] it to be unbelievable." *Id.* However, an ALJ may cast doubt on a plaintiff's credibility when the plaintiff' states that "she simply forgot to take medications which would have been effective in alleviating [her] symptoms." *Walsh v. Comm'r*, 2017 WL 1130366 at *9 (Dist. Ariz. 2017).

Regarding the effectiveness of her treatment options, the ALJ noted that Plaintiff's pulmonary impairments seemed under control with medication. (AR 27.) The ALJ further found that Plaintiff's Ehlers-Danlos Syndrome appeared to improve upon treatment. (*Id.*) Finally, the ALJ notes that Plaintiff has also consistently reported improvement in her mental symptoms with medication. (*Id.*) Regarding Plaintiff's non-compliance, the ALJ noted that Plaintiff reported in November 2014 that she forgot to take her asthma

medication, and later reported being "too busy" helping a friend to take her medication. (*Id.*) The ALJ accordingly concluded that Plaintiff was not fully credible as to her pain testimony. (*Id.*) This was not error.

In *Trevizo*, the plaintiff refused to take her medication on one occasion because she feared negative side effects. *Trevizo*, 871 F.3d at 669. The ALJ in that case failed to evaluate the claim or find that it was unbelievable, so that specific instance of noncompliance could not be used to discredit the plaintiff. *Id.* at 680. Here, Plaintiff did not refuse to take her medication on one occasion because she feared negative side effects. Rather, like the plaintiff in *Walsh*, Plaintiff frequently forgot to take her medication for no specific reason, or because she was too busy assisting her friends. Given the apparent effectiveness of Plaintiff's available treatment options, it was reasonable for the ALJ to find that Plaintiff's failure to take her medication on multiple occasions casts doubt on Plaintiff's credibility. The ALJ's second reason for discrediting Plaintiff is therefore valid.

### 3. Claimant's work history.

The ALJ's third reason for finding Plaintiff not fully credible is Plaintiff's work history. (AR 27.) The ALJ may consider a claimant's poor work history in finding a claimant not credible. *See New v. Berryhill*, 685 Fed. App'x. 607, 608 (9th Cir. 2017) (defining clear and convincing reasons to include a plaintiff's "sporadic employment history prior to the alleged disability onset date"). But an ALJ may not criticize a claimant for attempting to work *despite* a disabling condition. *See Hartman v. Colvin*, 652 Fed. App'x. 586 (9th Cir. 2016) (finding that plaintiff who made four attempts to work "during the short time between high school and his recurrent hospitalization" for his illness did not constitute "the 'extremely poor work history' that may justify an adverse credibility finding").

Here, the ALJ noted that Plaintiff worked only sporadically prior to the alleged disability onset date, which raises question as to whether her continuing unemployment was actually due to her medical impairments. (AR 27.) Plaintiff's record indicates that during about a 30-year period, her highest annual earnings comprised under $8,733, with

multiple years of zero or very low earnings. (AR 224-25, 227-32, 233.) The ALJ not only considered Plaintiff's poor work history since the onset of her disability, and failed attempts to work despite her medical impairments, but considered her work history in its entirety. Plaintiff's inability to work consistently throughout her adult life does not appear to be the result of her illness, and therefore reasonably casts doubt upon her credibility regarding her limitations. *Hartman*, 652 Fed. App'x at 608. The ALJ's third reason for discrediting Plaintiff's credibility is therefore valid.

### 4. Objective medical findings.

The ALJ's fourth and final reason for rejecting Plaintiff's subjective testimony is that it is not consistent with the objective medical findings in the record. (AR 28.) A plaintiff need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 859 F.3d at 1014 (quoting *Smolen*, 80 F.3d at 1282). However, insufficient objective medical evidence may discredit a plaintiff when combined with other relevant factors. *Joly v. Astrue*, 357 Fed.Appx. 937, 939 (9th Cir. 2009) (finding that the ALJ gave specific and legitimate reasons for discrediting a plaintiff where "there was insufficient objective medical evidence to support her allegations of pain, *and* her daily living activities were consistent with a capacity for light to medium exertion") (emphasis added).

As discussed herein, the ALJ identified specific and legitimate reasons for discrediting Plaintiff's subjective testimony, including Plaintiff's medication non-compliance and work history. Additionally, the ALJ notes that Plaintiff's daily activities do not support the limitations alleged in her subjective pain testimony, noting that Plaintiff has reported helping her significant other recover from his head trauma and reported being "too busy" helping a friend to take her medication. (AR 27.)[3] Regarding objective findings, the ALJ notes that the majority of Plaintiff's examinations indicated normal range of motion, muscle strength, and gait. (AR 27.) The ALJ acknowledged that in February 2014,

---

[3] The Court also notes that Plaintiff testified she usually does all the laundry in the house, regularly goes to the grocery store, usually cooks dinner for herself and her spouse, and does not have a hard time taking care of the apartment. (AR 48-52.)

Plaintiff had antalgic gait, but noted that she had no limitation in her neck or lumbar spine range of motion or muscle strength. (*Id.*) The normal objective medical findings identified by the ALJ, taken in combination with Plaintiff's daily activities, medication non-compliance, and suspect work history, supports the ALJ's decision to find Plaintiff not fully credible. The ALJ's fourth and final reason for discrediting Plaintiff is therefore valid.

### C. Conclusion

The ALJ did not err in discounting the weight of treating physicians' opinions or discounting the credibility of Plaintiff's testimony. Accordingly, the Court will affirm the decision.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 21st day of February, 2019.

Honorable John Z. Boyle
United States Magistrate Judge